We'll hear the next case, which is United States v. Segundo. Oh, he's not here? Mr. Mr. Signal? Oh, okay. And as I understand it, Mr. Eldridge is not here? So we'll track down Mr. We're not doing very well. So you've made it? You're here. Wait, wait. Is Mr. Porter here? Oh, here we come. Is this Mr. Signal? Sometimes the cases go over the time allotted and sometimes they don't. So take that into account. Okay. So now we'll hear United States v. Segundo. Good morning, Your Honors. It's a pleasure to be here this morning. My name is Roger Siegel. I represent the appellant, Antonio Segundo. He is not present. I waive his presence. He's in custody of the Bureau of Prisons for 51 months. The government, in this reentry case, sought to prove the defendant's guilt, attempting to establish that he was one of three individuals arrested by an agent, McManus, at the Calabasas Canyon, about two and a half miles north of the border, on September 22nd of 2005. The government's proof identifying the defendant, Mr. Segundo, as one of those three people was extraordinarily deficient. There were at least six agents who had contact with the three aliens, the three who came upon them and apprehended them in Calabasas Canyon and three who came to transport them from the site of the arrest at Calabasas Canyon to the Nogales Border Patrol Station where there were many, many, many, many detainees. With six agents having contact with the arrestees at Calabasas Canyon, the three who apprehended them and three who transported them from the site, the government could not extraordinarily, could not even produce one of those agents who could provide any name or who learned any name from the person purported to be the defendant, let alone the defendant's name. There was nobody that attached the name Antonio Segundo to the, excuse me, to the name, to the person arrested. That was, of those six agents, there was also nobody, the government was able to produce not one of those agents who was able to identify from any independent memory. Well, McManus did. I mean, it seems to me that that's really the hole in your argument, that McManus, it seems to me, I understand, well, Freas, the other person who testified, did seem to say that she had no independent recollection of him. But he didn't say that. He said that the picture jarred his memory, but he looked at the picture to refresh his memory. As soon as he saw it, he said, oh, yes, he remembered him. I remember his mannerisms. I remember what he was wearing and so on and so on. It seems to me that he did say he had independent recollection of him. I would agree, Your Honor, with Your Honor's assessment that there was a difference in the attempt to identify the defendant by McManus and by Agent Freas. But what was critical about Agent McManus's, what I would say, failure to identify the defendant was what he said was what he was able to remember. The only things he notably, he did not say that he was able to remember his appearance or face. He said he was able to recollect his mannerisms, which was his shirt. And his shirt. And there was no testimony as to what photograph he was looking at. But the bottom line for Agent McManus was that he was asked point blank, I believe it was the last question of him, and I'm paraphrasing here, had it not been for the photo that you had seen a couple of weeks prior to the trial, can you say that you could have identified the defendant from your independent recollection of what happened on that day? And he said, and I believe this is a quote, I don't know. I just don't have an answer to that. So, in other words, Agent McManus. But, you know, I realize you have to characterize this because you're counsel and you're making good argument. But my colleague is correct. This isn't a matter of where one says, well, I don't know whether I really would have particularly put out this. But he said two things, his shirt, his mannerisms, I knew exactly then what the situation was, and I thought it was significant that he also says, I couldn't have remembered the other two suspects because they were different. They did not have this extra stuff that made it such that I would know. I would respectfully suggest, Your Honor, that the fact that he could not recall what the other two defendants looked like is more probative of the fact that he simply didn't have an independent recollection of the individuals from the date of the arrest. With the number of aliens that these agents arrest, and Agent Frias testified that he processed over 500 a year, there literally, without documenting it, is very unlikely that an agent could remember from his independent memory. Now, that's not to say that it's very easy to do to be able to link a defendant, an alien who is one among thousands who were prosecuted in the District of Arizona, to the defendant, to the person who was arrested. Obviously, the most significant and obvious way would be through his name. But the thing that strikes one of the things that strikes me most about this case is that the defendant, that none of the agents, and even Agent McManus, none of them documented any name for this person, and apparently for him. I guess what you're saying is that with regard to what McManus said or what he remembered, when he said, I remembered his mannerisms and his shirt, he was certainly saying, having seen this picture, I remembered this guy. But what he never quite said was, I remembered that this guy was the guy I arrested that night. And it could have been a guy he arrested a different night. I'm just looking. I mean, it seems a fair inference from everything he said that when he saw the picture, he remembered that he had seen this guy because he was able to recall his mannerisms and his shirt and so on. This particular person is somebody that he had seen at some point. But the question is, how does that hook him up to the guy who was arrested that night? I'm sorry. How does that hook him up to the guy who was arrested that night? How does that ---- How does the fact that he, having seen the photo, he recollected that he had seen this person, that he knew what he was wearing when he saw him, he knew how he was behaving when he saw him, he remembered this person. But how does that hook him up to who he arrested that night? I'm trying to understand your argument. I'm suggesting that perhaps that is your argument. All right? What she just did was try to help you. Right. Softball. And I appreciate that you can't help her, but she was trying to help you. No, I actually ---- I just didn't hear you properly. I would say that the agent, first, he didn't say he was able to recognize his face and clearly said he had no independent recollection, or he couldn't say if he had any independent recollection. Do you think that this passes plain air review? I ---- Because there was no objection to this idea at all. Well, there was an objection. As to the sufficiency of the evidence, the March 8th minute entry reflects that the defendant, the defense attorney, went ahead and the court denied what was a motion to dismiss, and then at the end of trial, it denied his renewed motion. Now, at the court ---- But that isn't my question, because we're looking at the sufficiency of evidence. We have McManus' testimony that this is an I.D. for this defendant. We have testimony about it corroborating the confession. We also ---- McManus shows there was no official restraint when the defendant entered the country. That's more than enough to get to the sufficient evidence for the rational jury. If I'm going to fight this at all, I've got to fight it under his objection or his I.D., and there was no objection on the I.D. at all. I'm sorry to cut you off. I believe, because time is running, I believe that there was an objection to the identification. The defense counsel, Mr. Labor, objected based on hearsay. And I believe I cited the case of United States v. Anthony, where it says that where a defendant's objection to an identification, where it's unclear what the basis for it is, that it should be construed liberally. And this is specifically with respect to an identification issue. Now, defense counsel's questions of both McManus and Freas, and it was clear that the focus of his objection through the questions that he put to them were with respect to how that picture tainted his identification and whether he was identifying the defendant through the picture or from his independent memory. And I would also respectfully suggest that Agent McManus. Well, I guess you'll have to show me in the record where that is. I saw objections as the fingerprint card, as hearsay, nothing as to foundation or relevance. But maybe you'll have to refer me to that because I didn't see it. So maybe you can pass that question. Okay. What other arguments do you have? With respect to Agent McManus, all the other issues that you raise with respect to sufficiency of the evidence, for instance, with respect to lack of official restraint, it all goes back to the same issue. If you take that the government has proven beyond a reasonable doubt that this individual was, that the defendant was one of those three individuals who was present out there in the desert, then, yes, you get past the official restraint issue. If the McManus ID is sufficient, does the Freas one matter? Excuse me? If the McManus ID were sufficient, if we were to conclude that it was, would the Freas one matter? Well, if the McManus identification was sufficient, it would not cure, anyways, the issues of whether Agent Freas, who took an alleged admission from the defendant, could not identify him as the person who made the admission. So I think everything that came in through that alleged admission goes out the door. And then it would have to be a separate inquiry as to if you, absent those admissions which were admittedly very nonspecific. He admitted that the person that was interviewed admitted an entry on some unspecific date at some unspecific location, didn't say anything about the means of entry or how far he'd gotten. And none of that matters because it's all in the A file anyway, right? It's all in the A file anyway, so it wouldn't matter, would it? The deportation and alienage, I'm not questioning that. So what is there in the admissions that Freas had that would have made a difference? Well, the admission of an entry. But if McManus, that's why I'm trying to separate out the truth. If McManus stands up, then that doesn't matter either. Correct. If McManus's identification stands up, I believe you're correct. So Freas just doesn't matter at that point. Right. But what I would stress about McManus's identification is that you can slice it a number of different ways, but when he says that it jarred my memory of his shirt and his mannerisms and he did say that you couldn't see the mannerisms, obviously, in the photo, but he doesn't ever once say that it jarred his memory as to the defendant's appearance as opposed to the shirt. But of course that's what he's saying. He's saying once I saw him, I had a total recollection of the person. If he couldn't recollect what the person looked like, then how would he know what his mannerisms were? It's because he now remembered who this person was and he was, therefore, able to remember other things about the person that weren't in the photo. That's obviously what he's saying. I would say respectfully, Your Honor, that when Mr. McManus in the end answers, no, I can't tell you that I have any independent recollection of what this defendant looked like and no, I can't tell you, I don't know whether I have independent recollection of him. The whole doctrine of refreshing recollection assumes that, all right. In other words, this is just standard refreshing of recollection, right? It happens all the time. People say, well, I can't remember. Well, you show them something and say, oh, now I can remember. We accept that in general. I mean, is there some special rule about pictures for that? Well, yeah, with respect to the – I mean, this was not the case of a reflection or recollection being refreshed in the courtroom. This is a matter of an officer being – taking it upon himself to look at one picture that was not presented to him as part of a lineup. All of the – in fact, the case that the government cites in support of the identification suggests that that type of – that where officers look at a picture in preparation for trial, the reason why it was upheld in that – in the case cited by the government, its name slips me right now, but the reason why that was upheld, looking at the photos in preparation for trial, was because those agents had already done a post-arrest identification. And that was Thompson. Okay. You have used your time. You're in the red, so we'll hear from the government. Thank you. Good morning. May it please the Court, I'm Chris Cabanillas from the District of Arizona. This Court's questions, again, indicate that it's hit the nail on the head with regard to McManus's identification. Judge Berzon, you're correct that McManus said when he saw the photograph, it reminded him of what this guy looked like.  I think his shirt was noted by Judge Smith. And so there was no insufficiency as a matter of law, which I think is what the defendant is arguing, that this should not even have been admitted. And, of course, the jury heard all this stuff. The jury heard cross-examination on the nature of the identification and everything else. So I think the Court is in good stead there affirming that. I would also note the fingerprint evidence in this case demonstrates why it is that almost everything, I think, that I can think of that the defendant is arguing in his brief, really kind of all of it relates to this in-court identification of McManus and the in-court identification of Frias. But if you take a look at all the evidence, Judge Berzon, you asked Mr. Siegel, what do we have to link him that he's the guy? And if you take a look at Agent Davila's testimony, Agent Davila was the agent who fingerprinted the defendant after he was in custody, and that's in Exhibit 8, and the defendant does not dispute that that was properly admitted. Agent Davila said, yes, I fingerprinted him in Exhibit 8, and she saw him in court and said, yes, that's the guy I printed. Then you have the fingerprint expert who comes in and says Exhibit 8 prints are the same as the prints in Exhibit 7, in Exhibit 6, 5, and 4, all A file documents. And that proves that he was the guy in custody, but it doesn't prove he was the guy who was found at the border. Well, all of that corroborates, I guess I would say, fingerprint – the fingerprint card, Exhibit 7, has the date of the arrest on there, too. And it also has Antonio Segundo, and I think one of the points the defendant was making, as I recall, is that there's no proof that this is the Antonio Segundo that was the one who was hooked up and everything else, and so I would just, I guess, bring to your attention the fingerprint evidence. But you still need McManus to put him at the border. There's nobody else. Well, you know, to the extent that they're apprehending him, but even in the absence of that, there are times when you have agents who are not able to recall, and you have the fingerprint evidence and the A file and the processing agent and all that, and that's how they get that established, that he was the one. So I'm just saying that, you know, that the identification of McManus and the later identification of Agent Frias, if there was any error in the admissibility of that, it wouldn't affect the case itself, I guess is my point, that any error there would be harmless. But, again, I don't think there was any error. I'm not seeing that, because, I mean, if you just start at the point he's in custody, you can't make a case out. I'm sorry? If you just start at the point that you have somebody in custody, it's not going to prove the case. No, I'm talking about the in-court identification. You know, there are times that somebody can't say for sure, that is the guy. I'm just saying that they rely on their, you know, they rely on the reports or they rely on the documentation. And I'm just saying that it's the in-court identification that is not necessarily dispositive. I just wanted to raise that fingerprint evidence to you. But in this instance, what's odd, I gather, is that we don't have we don't have a Segundo at the border. Somebody named Segundo, because they never asked him his name, apparently. Well, his name is actually on the fingerprint card. Yes, but that was later. Mm-hmm. At the border, we do not have a person named Alberto Segundo, right? Because nobody ever gave that name except through the ID of McManus. So you still you can't avoid the McManus ID if you want to make this case out. I don't see how you can. Well, Frias also testified. But Frias definitely did not have an independent recollection of any kind. She said she did. No, but the name you just mentioned? Mm-hmm. Agent Frias noted the name. It was on his the file and the. Okay. But she wasn't at the border either. No, that's true. So the only way we get Alberto Segundo at the border is if McManus's ID stands up. Can we do that? Is that much so? Your Honor, I guess I'm disinclined to agree that in the absence of an in-court identification by Agent McManus, this case goes south. I disagree with that. I think there is sufficient evidence, circumstantial evidence, to show, including direct evidence and the fingerprint evidence, that would demonstrate and be able to allow this Court to affirm, regardless of McManus. But again, the McManus ID is just fine. All right. So to go to the McManus ID then. What I'm trying to understand is why ordinarily a single photo, showing somebody a single photo in a lineup or something is not, is at least suspect. Now, I gather that it could be overcome anyway if the guy says I have an independent recollection now. In other words, if this was a classic, you know, first-person ID problem in a crime and you showed somebody just a single photo, you would have something of a problem. Well, actually, I think that's where this Court's Thompson case comes in, because this Court said that when you're refreshing recollection with a photograph, that is not the in-court identification procedure, pretrial ID procedure you're used to seeing in Neal v. Vickers, that that is not. It says in here there's nothing improper in showing a witness a photograph to refresh her recollection. Now, it's true in that case we had a pretrial identification that the agent had, or I can't remember, the witness had made here. But the Court in Thompson did not say that that's the only circumstance under which you could use a photograph to refresh recollection. You can use anything to refresh recollection. And, of course, the jury heard all about the nature of this, and the cross-examination questions that Mr. Siegel asked about, you know, would you be able to do it without the photograph, and all that stuff. So I think all of that goes to the weight, not the admissibility of the in-court ID. With that, does the Court, if the Court doesn't have any more. You know, with the finger one thing I forgot to mention, that fingerprint card, I think in the reply brief, the defendant, Exhibit 7 is the fingerprint card of the arrest. And I believe the defendant in the reply brief notes that it was never admitted. That is incorrect. It was admitted. And it's on RT111 and 113, ER144 and 146. It was admitted through the fingerprint examiner. I just wanted to make that as part of the record there. Thank you. Thank you. Does anybody have any further questions of Pellis? Then we'll rely on our brief for the rest and ask the Court to confirm. Thank you.  The case just argued is submitted for decision.
judges: Schroeder, Berzon, Smith